UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL KISHMOIAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>AIR INDUSTRIES GROUP, MICHAEL N. TAGLICH, ROBERT F. TAGLICH, PETER D. RETTALIATA, SEYMOUR G. SIEGEL, DAVID J. BUONANNO, ROBERT C. SCHROEDER AND MICHAEL BRAND,<br><br>Defendants. | Case No. 18cv5757<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Michael Kishmoian ("Plaintiff"), by and through his undersigned attorneys, alleges the following on information and belief, except as to those allegations pertaining to his own knowledge and conduct, which are made upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Air Industries Group ("Air Industries" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued and disseminated by Air Industries; and (c) review of other publicly available information concerning Air Industries.

**INTRODUCTION**

1.  Plaintiff asserts this action to remedy the false and misleading disclosures made by Air Industries Group and its Board of Directors (the "Board) in the Company's proxy statement related to its 2017 annual meeting of stockholders (the "Annual Meeting") because those disclosures violated federal securities laws.

2. Specifically, on August 24, 2017, the Company filed a Schedule 14A Proxy Statement (the "Proxy") with the SEC for the Annual Meeting. In the Proxy, the Board asked stockholders of Air Industries to approve an amendment (the "Amendment") to the Company's Articles of Incorporation to increase the number of authorized common stock from 25,000,000 to 50,000,000 (the "Share Increase Proposal").

3. The Proxy affirmatively represented that brokers could not vote shares that they held on behalf of someone else in connection with the Share Increase Proposal unless that party directed the brokers how to vote. As stated in the Proxy, any shares held by brokers on behalf of another for which that party did not give voting instructions would be counted as a "broker non-vote" and treated as a "Against" vote with respect to the Share Increase Proposal.

4. However, in truth, the brokers had discretion to cast votes without any instructions from the actual stockholders, and the Company counted broker non-votes as affirmative votes.

5. As such, the Proxy was materially false and misleading. The proxy solicitation prevented Air Industries stockholders from making an informed decision about whether to approve the Share Increase Proposal. On the basis of these false and misleading disclosures, Air Industries stockholders voted to approve the proposal with 11.4 million affirmative votes (with the majority being broker non-votes) and 1.2 million "Against" votes.

6. Had the vote concerning the Share Increase Proposal been tabulated as represented in the Proxy, the Share Increase Proposal would not have been approved. If the broker non-votes were properly counted as "Against" votes, the Share Increase Proposal would have only received approximately 4.5 million affirmative votes versus approximately 8.1 million "Against" votes.

7. As a result of the above misconduct, the Company's stockholders have been harmed.

8. Accordingly, Plaintiff brings this action seeking the cancellation of the Amendment that was adopted at the Annual Meeting on the basis of the materially false and misleading representations made by the Board, as well as a rescission of any and all shares issued using the shares purportedly created via the Amendment.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.

10. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

11. Venue is proper because many of the acts and conduct complained of herein occurred in this District and Air Industries is headquartered in this District.

**PARTIES**

12. Plaintiff has held Air Industries common stock at all relevant times, and suffered damages as a result of the federal securities law violations and/or misleading statements and/or material omissions alleged herein.

13. Air Industries is a Nevada corporation with its principle executive offices located at 360 Motor Parkway, Suite 100, Hauppauge, New York. Air Industries is an aerospace company operating primarily in the defense industry, as well as in the commercial and industrial sector. The Company manufactures and designs structural parts and assemblies that focus on flight safety, including landing gear, arresting gear, engine mounts, flight controls, throttle quadrants, and other components.

14. Defendant Michael N. Taglich ("M. Taglich") has been Chairman of the Company`s Board since September 22, 2008. He is also Chairman and President of Taglich Brothers, Inc. ("Taglich Brothers") a securities firm which he co-founded with his brother, Robert F. Taglich, in 1992.

15. Defendant Robert F. Taglich ("R. Taglich") has been a director of the Company since 2008. He is a Managing Director and a co-founder of Taglich Brothers. M. Taglich and R. Taglich are brothers.

16. Defendant Peter D. Rettaliata ("Rettaliata") has been Company's Acting President and Chief Executive Officer since March 2, 2017, and has served as a director of the Company since 2005.

17. Defendant Seymour G. Siegel ("Siegel") served as a director of the Company between 2008 and October 23, 2017.

18. Defendant David J. Buonanno ("Buonanno") has been a director of the Company since September 2008.

19. Defendant Robert C. Schroeder ("Schroeder") has been a director of the Company since September 2008. He is also Vice President at Taglich Brothers.

20. Defendant Michael Brand ("Brand") has been a director of the Company since September 2012.

21. Defendants M. Taglich, R. Taglich, Rettaliata, Siegel, Buonanno, Schroeder and Brand are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

22. On August 24, 2017, the Company filed the Proxy with the SEC for the Company's Annual Meeting. Per the Proxy, as of August 10, 2017, (the "Record Date"), the Company had a total of 1,294,441 shares of Series A Preferred Stock and 14,252,820 shares of common stock outstanding and entitled to be voted at the Annual Meeting. Holders of Series A Preferred Stock were entitled to a

total of 2,630,951 votes, and holders of common stock were entitled to a total of 14,252,820 votes, on each of the proposals described in the Proxy.

23. In the Proxy, the Board sought stockholder approval of the Share Increase Proposal (proposal number two in the Proxy), which would amend the Company's Articles of Incorporation increasing the number of shares of common stock the Company authorized to issue from 25,000,000 to 50,000,000 shares. The Board recommended that stockholders approve the Amendment.

24. As disclosed in the Proxy, in connection with a July 2017 public offering, the Company had agreed to effect a number of transactions relating to private securities placements (the "Restructuring Transactions"). Once in effect, these transactions would increase the number of outstanding shares of Air Industries' common stock by 10,199,359 shares. Specifically, if the Restructuring Transactions were approved, then the Company would be obligated to issue 8,629,606 shares upon the automatic conversion of the Series A Preferred Stock, 1,222,809 shares upon conversion of aggregate principal amount of the Company's subordinated convertible notes sold in a bridge financing in May 2017 (the "May 2018 Notes") and 346,944 shares upon the automatic conversion of the promissory notes issued to M. Taglich and R. Taglich (the "Taglich Notes").

25. In addition, the Company was obligated to issue a total of 1,950,148 shares of common stock upon conversion of its outstanding 8% Subordinated Convertible Notes, a total of approximately a total of 1,469,530 shares of common stock upon exercise of outstanding warrants and 1,041,342 shares of common stock upon exercise of options granted to Air Industries' non-employee directors, officers, employees and consultants under the Company's incentive equity plans (the "Other Obligations").

26. The Proxy further disclosed that, if the stockholders did not approve the Share Increase Proposal, the Company would not have sufficient authorized shares to fulfill all of its obligations to

5

issue shares of common stock under the Restructuring Transactions and the Other Obligations. The Company had only 10,747,174 shares of common stock authorized and available for issuance, while the total number of shares of common stock the Company was obligated to issue under the Restructuring Transactions and the Other Obligations was 14,660,379.

27. Moreover, M. Taglich and R. Taglich were the beneficial owners of 404,664 shares of Series A Preferred Stock, the May 2018 Notes, the Taglich Notes and 8% Subordinated Convertible Notes, making them the recipients of 6,217,661 of Air Industries newly authorized and issued shares of common stock.

28. As disclosed in the Proxy, in order for the Share Increase Proposal to be approved, a majority of all stockholders (not just a majority of the votes cast) had to vote "Yes." In other words, in order for the Share Increase Proposal to be approved, 10,310,769 shares had to vote in favor of it.

29. Specifically, the Company told stockholders that:

> The affirmative vote of majority of the total voting power of the Series A Preferred Stock and common stock, **or a total of 10,310,769 votes**, is required to approve the [Share Increase Proposal]. Abstentions and broker non-votes will be counted as votes "against" this proposal. (Emphasis added).

30. A broker non-vote occurs in connection with shares held by a stockholder in "street name," *i.e.,* the stockholder's stock is held by bank or broker, with the bank or broker actually being the stock's record holder. To vote shares held in street name, a stockholder instructs the bank or broker how to the vote.

31. Under the New York Stock Exchange rules, if a stockholder does not give voting instructions to the bank or broker, the bank or broker has the authority to vote the shares using their discretion on "discretionary" proposals but not "non-discretionary" proposals. As represented in the Proxy, the Share Increase Proposal was a "non-discretionary" proposal, and banks and brokers did "not have discretionary authority to vote" customers' un-voted shares held by the firms in street name on it.

6

In fact, the only "discretionary" proposal at the Annual Meeting was a proposal to ratify the Company's independent public accounting firm, and brokers had discretion to vote uninstructed shares. Specifically, the Proxy states:

> If your shares are held through a broker, bank or other holder of record, you hold your shares in "street name" and you are considered the "beneficial owner" of those shares. This Notice of Annual Meeting and Proxy Statement and any accompanying documents have been provided to you by your broker, bank or other holder of record. As the beneficial owner, you have the right to direct your broker, bank or other holder of record how to vote your shares by using the voting instruction card or by following their instructions for voting by telephone or on the Internet. **Absent instructions from you**, under applicable regulatory requirements, your broker may vote your shares on the ratification of the appointment of our independent registered public accounting firm for fiscal 2017, but **may not vote your shares on** the election of directors, **the amendment to our articles of incorporation increasing the number of shares of common stock we are authorized to issue from 25,000,000 shares to 50,000,000 shares** (the "Charter Amendment"), the approval of restructuring transactions related to our public offering in July 2017 (the "Restructuring Transactions"), the approval of our 2017 Equity Incentive Plan, or any of the other proposals to be voted on at the Annual Meeting.
>
> \*    \*    \*
>
> If you are a beneficial owner whose shares are held of record by a broker, you must instruct the broker how to vote your shares. **If you do not provide voting instructions, your shares will not be voted on any proposal on which the broker does not have discretionary authority to vote.** This is called a **"broker non-vote."** In these cases, the broker can register your shares as being present at the Annual Meeting for purposes of determining the presence of a quorum but will not be able to vote on those matters for which specific authorization is required under the rules of the New York Stock Exchange ("NYSE").
>
> If you are a beneficial owner whose shares are held of record by a broker, your broker has discretionary voting authority under NYSE rules to vote your shares on the ratification of Rotenberg Meril Solomon Bertiger & Guttilla, P.C. as our independent registered public accounting firm, even if the broker does not receive voting instructions from you. **However, your broker does not have discretionary authority to vote on the election of directors, the approval of the [Share Increase Proposal], the approval of the Restructuring Transactions or the approval of our 2017 Equity Incentive Plan, in which case a broker non-vote will occur and your shares will not be voted on these matters.** (Emphasis added).

32. Commonly a broker non-vote will have not be counted and will have no impact on a vote.  However, where a proposal must be affirmatively approved by a majority of all stockholders, such as the Share Increase Proposal, broker non-votes are treated as "Against" votes.

33. In addition to seeking stockholder approval of the Share Increase Proposal, the Company also sought stockholder approval of other "non-discretionary" proposals: (1) to re-elect directors; (2) to approve the restructuring transactions related to the public offering of common stock completed July 12, 2017; and (3) to approve the Company's 2017 Equity Incentive Plan (the "Additional Proposals").

34. In contrast with the Share Increase Proposal, the Company disclosed that each of Additional Proposals required either a plurality vote or only the affirmative vote of a majority of the votes cast in order for the respective proposal to be approved.  As such, any broker non-votes cast would not have an impact on the vote.

35. On October 3, 2017, the Company filed a Form 8-K (the "Form 8-K") with the SEC in which it announced the purported final results of the Annual Meeting.  A total of 12,872,718 shares were present and accounted for at the Annual Meeting.

36. A summary of the reported results is below:

| Proposal | Votes Cast | | | | |
|---|---|---|---|---|---|
| | For | Withheld | | Broker Non-Votes | Total |
| Michael N. Taglich | 5,419,242 | 524,038 | | 6,929,438 | 12,872,718 |
| Peter D. Rettaliata | 5,422,097 | 521,183 | | 6,929,438 | 12,872,718 |
| Robert F. Taglich | 5,420,630 | 522,650 | | 6,929,438 | 12,872,718 |
| Seymour G. Siegel | 5,411,566 | 531,714 | | 6,929,438 | 12,872,718 |
| David J. Buonanno | 5,413,974 | 529,306 | | 6,929,438 | 12,872,718 |
| Robert C. Schroeder | 5,468,933 | 474,347 | | 6,929,438 | 12,872,718 |
| Michael Brand | 5,155,534 | 787,746 | | 6,929,438 | 12,872,718 |
| | For | Against | Abstain | Broker Non-Votes | Total |
| **Share Increase Proposal** | **11,425,117** | **1,175,636** | **271,965** | **0** | **12,872,718** |
| Restructuring Proposal | 5,526,104 | 365,908 | 51,268 | 6,929,438 | 12,872,718 |
| 2017 Equity Incentive Plan | 5,133,099 | 706,843 | 103,338 | 6,929,438 | 12,872,718 |
| Ratification of Accountant | 12,146,801 | 517,081 | 208,836 | 0 | 12,872,718 |

37. As demonstrated above, the number of votes purportedly cast in favor of the Share Increase Proposal and the complete lack of any broker non-votes stand in stark contrast with the votes cast with respect to the other proposals at the Annual Meeting. Although there were purportedly no broker non-votes for the Share Increase Proposal, there were exactly 6,929,438 broker non-votes cast for the Additional Proposals.

38. These reported results are simply not possible if the Company tallied the votes as it represented to stockholders it would. It is inconceivable that the beneficial owners of exactly 6,929,438 shares of common stock instructed their brokers, banks, or other nominees to vote their shares "For" the Share Increase Proposal while simultaneously failing to provide similar instructions – or, indeed, providing any instruction at all – with respect to the Additional Proposals.

9

39. As such, the Board misrepresented to stockholders as to how the votes cast with respect to the Share Increase Proposal would be counted.

40. Stockholders of Nevada corporations have the right to cast fully informed votes based on truthful proxy solicitations from their fiduciaries. How a vote is to be counted is the most fundamental information that a reasonable Air Industries stockholder would have found important in determining whether to approve the Share Increase Proposal. As represented in the Proxy, a stockholder's non-vote should have had a negative impact on the vote on the Share Increase Proposal. However, in truth, a stockholder's non-vote was actually an affirmative vote, and served to pass the Share Increase Proposal.

41. Had the vote concerning the Share Increase Proposal been tabulated as represented in the Proxy, the Share Increase Proposal would not have been approved. If the broker non-votes were properly counted as "Against" votes, the Share Increase Proposal would only have received approximately 4.5 million "For" votes versus approximately 8.1 million "Against" votes.

42. Relying on the improper stockholder vote, on October 30, 2017, the Company has filed an amended Articles of Incorporation with the state of Nevada, increasing the number of authorized common stock from 25,000,000 to 50,000,000.

43. Moreover, since the Annual Meeting, the Company has sold approximately 1,792,452 shares of common stock warrants to purchase additional 480,000 shares of Air Industries' common stock pursuant to several private placements. Moreover, M. Taglich and R. Taglich purchased approximately 413,818 shares and 72,000 warrants to purchase the Company's common stock pursuant these offerings. Taglich Brothers also acted as placement agent in all the private placements and earned $189,000 in fees for its services. Therefore, not only did the Company's insiders benefit from the improperly authorized shares by buying additional shares of common stock, M. Taglich and

R. Taglich also derived a personal monetary benefit through Taglich Brothers by acting as a placement agent in the private placements.

44. According to the Company's public filings, there were a total of 26,205,341 shares of the Company's common stock outstanding as of May 10, 2018.

## CLASS ACTION ALLEGATIONS

45. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action on his own behalf and as a class action on behalf of those who held Air Industries stock as of the close of business on August 10, 2017, which was the record date for stockholders entitled to vote at the Annual Meeting (the "Class"). Defendants are excluded from the Class, as are Defendants' affiliates, immediate families, legal representatives, heirs, successors, or assigns and any entity in which Defendants have or had a controlling interest.

46. This action is properly maintainable as a class action.

47. The Class is so numerous that joinder of all members is impracticable. The Company had 1,294,441 shares of Series A Preferred Stock and 14,252,820 shares of common stock outstanding as of August 10, 2017. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, upon information and belief, there are thousands of members in the Class.

48. Questions of law and fact are common to the Class, including, *inter alia*, the following:

a. whether the Proxy contained materially false and misleading statements, or omitted information necessary to render them not misleading; and

b. whether Plaintiff and the other members of the Class have been or will be harmed by the wrongs complained of herein.

49. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of other members of

the Class and Plaintiff has the same interests as the other members of the Class. All Air Industries stockholders were forced to cast an uninformed vote as a result of the materially false and misleading Proxy. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

50. The prosecution of separate actions by individuals members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair their ability to protect their interests.

51. Defendants have acted, and refused to act, on grounds that apply generally to the Class, and are causing injury to the Class, such that final injunctive or declaratory relief is appropriate on behalf of the Class as a whole.

52. The questions of law and fact common to the members of the Class predominate over any questions affecting only its individual members, such that a class action is superior to any other available method for fairly and efficiently adjudicating the controversy.

## COUNT I
**Against All Defendants for
Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

53. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54. Defendants issued, caused to be issued, and participated in the issuance of materially false and misleading written statements to stockholders which were contained in the Proxy. The Proxy contained the Share Increase Proposal. The Proxy, however, misrepresented and failed to disclose how the vote would be counted. In the Proxy, Defendants falsely represented that broker non-votes would

count as "No" votes with respect to the Share Increase Proposal. In truth, however, broker non-votes did not count as "No" votes and brokers had discretion to vote the shares they held on behalf of another as they wished.

55. By reasons of the conduct alleged herein, the Defendants, which includes the Company and the directors that caused or allowed the issuance of the Proxy, violated section 14(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Air Industries misled and/or deceived its stockholders by falsely portraying how the votes concerning the Share Increase Proposal would be counted.

56. This information would have been material to Air Industries' stockholders in determining how to vote with respect to the Share Increase Proposal.

57. Plaintiff thereby seeks relief for damages inflicted upon the stockholders in connection with the improper approval of the Share Increase Proposal based upon the misleading and incomplete Proxy. Plaintiff also seeks to void the Share Increase Proposal.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A. Declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

B. A declaration that the Proxy was materially false and misleading;

C. Rescinding the amendment to the Articles of Incorporation that purportedly was adopted on the basis of the false and misleading Proxy;

D. Against all Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' wrongdoing, plus pre-judgment and post-judgment interest;

E. Equitable and/or injunctive relief as necessary or permitted by law and equity;

F. Awarding Plaintiff the costs and disbursements of this action, including reasonable allowance of fees and costs for Plaintiff's attorneys, experts, and accountants; and

G. Granting Plaintiff such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 15, 2018   Respectfully submitted,

**LEVI & KORSINSKY, LLP**

_/s/ AMY MILLER_
Joseph Levi
Amy Miller
William J. Fields
Samir Shukurov
LEVI & KORSINSKY, LLP
55 Broadway, 10th Floor
New York, New York 10006
Tel: (212) 363-7500
Fax: (212) 363-7171

**BRAGAR EAGEL & SQUIRE P.C.**
Melissa A. Fortunato
Shaelyn Gambino-Morrison
885 Third Avenue, Suite 3040
New York, NY 10022
Telephone: (212) 308-5858
Facsimile: (212) 214-0506
fortunato@bespc.com
gambino-morrison@bespc.com

*Attorneys for Plaintiff*